IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| SIMON BALDERAS, ET AL. | § | |
| | § | CIVIL ACTION |
| vs. | § | NO. 6:01CV158 |
| | § | |
| STATE OF TEXAS, ET AL. | § | |

This Filing Applies to: All Actions

Before HIGGINBOTHAM, Circuit Judge, HANNAH and WARD, District Judges.

PER CURIAM:

This phase of the case involves the redistricting of the Texas State House of Representatives following the 2000 census. Following the failure of the state legislature to implement a redistricting plan for the House, the state constitutionally-created Legislative Redistricting Board adopted a plan, Plan 1289H, on July 24, 2001, to redistrict the 150 House seats.[1] Because Texas is a "covered" jurisdiction under section 5 of the Voting Rights Act, the State then submitted this plan to the United States Department of Justice for preclearance on August 16, 2001.[2] We heard evidence relating to House redistricting on November 13-15,

---

[1] See Tex. Const. art. III, § 28.

[2] See 42 U.S.C. § 1973c.

2001. On November 16, 2001, the Justice Department objected to the LRB House plan as causing a retrogression with respect to the number of Hispanic opportunity districts. We will first describe the course of this litigation and then address the parties' contentions.

I

Voters and various officeholders filed multiple lawsuits in state and federal court challenging the districting of Texas' congressional seats and both houses of the state legislature based on the 2000 census.[3] The federal cases were consolidated into the earliest-filed federal action, Balderas v. Texas, No. 6:01-CV-158, before this three-judge court.[4]

The Texas Constitution requires that the Texas legislature, "at its first regular session after the publication of each United States decennial census, apportion the state into senatorial and

---

[3] Balderas v. Texas, Civil No. 6:01-CV-158 (E.D. Tex.); Mayfield v. Texas, Civil No. 6:01-CV-218 (E.D. Tex.); Manley v. Texas, Civil No. 6:01-CV-231 (E.D. Tex.); Del Rio v. Perry, No. GN-003665 (353rd Dist. Ct., Travis County, Tex.); Cotera v. Perry, No. GN-101660 (353rd Dist. Ct., Travis County, Tex.); Connolly v. Perry, No. GN-102250 (98th Dist. Ct., Travis County, Tex.); Associated Republicans of Texas v. Cuellar, No.2001-26894 (281st Dist. Ct., Harris County, Tex.); Rivas v. Cuellar, No.2001-33760 (152nd Dist. Ct., Harris County, Tex.).

[4] Other three-judge courts had dismissed prior suits filed prematurely.

-2-

representative districts."[5] The Constitution also provides that, "[i]n the event the Legislature shall at any such first regular session following the publication of a United States decennial census, fail to make such apportionment, same shall be done by the Legislative Redistricting Board of Texas," which is "composed of five (5) members, as follows: The Lieutenant Governor, the Speaker of the House of Representatives, the Attorney General, the Comptroller of Public Accounts and the Commissioner of the General Land Office."[6] In May 2001, the 77th Legislature adjourned *sine die* without enacting Senate and House redistricting plans and so the LRB convened and adopted Senate and House redistricting plans on July 24, 2001. Under state law, these plans, "executed and filed with the Secretary of State, shall have force and effect of law."[7]

Pursuant to the Supreme Court's direction in *Growe v. Emison*,[8] on July 23, 2001 we deferred proceedings in federal court until October 1, 2001. Proceedings on the congressional redistricting concluded on November 2, 2001 and our order issued on November 14, 2001. The Justice Department precleared the Senate LRB plan on October 15, 2001, and we heard evidence and arguments relating to

---

[5] Tex. Const. art. III, § 28.

[6] *Id.*

[7] *Id.*

[8] 507 U.S. 25 (1993).

-3-

challenges to that plan on November 5-6, 2001.

From November 12-15, 2001 we heard evidence relating to redistricting of the Texas House of Representatives. We did not reach a judgment, instead awaiting the Justice Department's decision on preclearance of the LRB House plan. On November 16, 2001, the Justice Department objected to parts of the LRB House plan as causing an impermissible retrogression in Hispanic voting strength. The parties submitted post-trial briefs on November 21, 2001 addressing the Justice Department's objection with suggested remedies as well as a remedies for any other alleged federal statutory and constitutional defects in the LRB plan.

II

Our decision here is limited to correcting the federal constitutional and statutory defects in the LRB House plan, including the concerns raised in the objection of the Justice Department.[9] That approach is dictated by the Supreme Court's decision in *Upham v. Seamon*.[10] That case dealt with the

---

[9] To the extent the plaintiffs raise claims that ask that this court enforce state law against the State, they are barred by the Eleventh Amendment, and this court has no jurisdiction to hear them, whether for injunctive or for declaratory relief. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106, 121 (1984); *Watson v. Texas*, 261 F.3d 436, 440-41 (5th Cir. 2001); *Earles v. State Bd. of Certified Public Accountants of La.*, 139 F.3d 1033, 1039-40 (5th Cir. 1998); *Hays County Guardian v. Supple*, 969 F.2d 111, 125 (5th Cir. 1992).

[10] 456 U.S. 37 (1982).

-4-

reapportionment of congressional districts in Texas following the 1980 decennial census. The legislature passed a redistricting plan, which was submitted to the Justice Department for preclearance. As in this case, the Justice Department objected to the state plan. A three-judge district court remedied the problems identified by the Justice Department, but also went further, and changed portions of the map in which the Justice Department had raised no Section 5 concerns. The Supreme Court reversed, noting that it had "never said that the entry of an objection by the Attorney General to any part of a state plan grants a district court the authority to disregard aspects of the legislative plan not objected to by the Attorney General."[11] The Supreme Court held that a district court's modifications to a state plan, after objections by the Justice Department, should be "limited to those necessary to cure any constitutional or statutory defect."[12]

Speaker Laney argues that *Upham* is not controlling because the Justice Department has raised more numerous concerns in this plan than it did in the 1980 congressional plan. In *Upham* and in this case, because retrogression is measured against the entire State, the Justice Department objected to the entire plan.[13] While our remedy may affect portions of the map adjacent to those districts

---

[11] *Id.* at 43.

[12] *Id.*

[13] *See id.* at 38 n.1.

the Justice Department addressed in its objection, we may not depart from *Upham*. We address first those federal statutory and constitutional claims raised by the parties in this case, and then the Justice Department's objections and our remedy.

### III

### A

Looking first to the Balderas plaintiffs' claims, we find that the Latino population is not sufficiently compact or numerous to support additional Latino districts. We also find that, under the totality of the circumstances, the failure to create additional Latino majority districts will not prevent full and equal Latino participation in the political process. Indeed, the creating of additional districts beyond those in our adopted plan would risk giving rise to retrogression in existing Latino majority districts. We conclude that the Balderas plaintiffs have failed to prove that Section 2 of the Voting Rights Act requires the creation of additional Latino districts based upon allegations of Latino vote dilution.[14]

---

[14] The Mayfield plaintiffs and Speaker Laney invite us to recognize and sustain a challenge to the LRB plan based on minority influence districts. We reiterate that we have no power to address such claims. *Valdespino v. Alamo Heights Indep. Sch. Dist.*, 168 F.3d 848, 852-53 (5th Cir. 1999); *see also Johnson v. De Grandy*, 512 U.S. 997, 1008-09 (1994) (declining to decide whether "influence district" claims are cognizable under section 2 and

B

The Amps intervenors have similarity failed to identify a violation of Section 2 of the Voting Rights Act that would compel the creation of an African-American opportunity district in Tarrant County. Their proposed minority opportunity district relies on a supposed coalition of Latino, Asian, and African-American populations to achieve majority-minority populations, presenting testimony that members of these populations have worked together in campaigns. The evidence does not persuade us, however, that Latinos, Asians, and African-Americans vote cohesively as required by *Thornburg v. Gingles*[15] so as to constitute a majority in a single-member district.[16] There is no section 2 violation, and therefore we have no authority to add an opportunity district.

C

Speaker Laney also argues that certain districts are unconstitutional because they are the product of intentional racial discrimination, in violation of the Equal Protection Clause. We find no such violation.

Having rejected the parties' claims, we now address the

---

citing three prior cases in which the Court similarly declined to so decide).

[15] 478. U.S. 30, 50-51 (1986).

[16] See *Growe*, 507 U.S. at 41; *Valdespino*, 168 F.3d at 852-53.

Justice Department's objection and fashion a remedy. We detail this remedy below.

IV

Before discussing the Justice Department's concerns and our remedy, we wish to be clear that our plan is a judicial plan and, while it unavoidably bears some resemblance to plans submitted by the parties in certain areas, it is entirely of our own making. Therefore it is not subject to the preclearance requirements of Section 5 of the Voting Rights Act.[17]

The Justice Department concluded that the LRB plan represented an impermissible retrogression of Latino voting strength in South and West Texas. Specifically, the Justice Department objected to the loss of a Latino District in Bexar County, as well as the reduction of Latino voting strength in Districts 35, 38, and 74. The plan we have adopted addresses all of their concerns.

In Bexar County, the LRB plan reduced the number of majority Latino districts from seven to six. We reconstituted a seventh majority Latino district without pairing any Latino incumbents or splitting any Voter Tabulation Districts, and we equalized the level of Spanish surnamed registration (SSRV) among all seven Latino districts. Each district has an SSRV of at least 55 percent, allowing Latinos in those districts to elect a candidate of their

---

[17] *Lopez v. Monterey County*, 525 U.S. 266, 704-05 (1999).

choice.

The Justice Department also objected to the LRB's proposed District 38, which reduced the Spanish surnamed registration level from 70.8 to 60.7 percent. The LRB Plan also removed over 40 percent of the core of the existing District 38, 90 percent of which was Latino. To respond to these objections, we modified the district. The new district has an SSRV level of 73.4 percent and current District 38 residents make up 83.1 percent new District 38. Thus, we preserve the opportunity for Latinos to elect their candidate of choice.

Similarly, the Department objected to the proposed District 74, which reduced the Spanish surname registration level from 64.5 to 48.7 percent. We reconfigured District 74, raising its SSRV level to 54.0 percent, while preserving county lines as required by the Texas Constitution. While the resulting district still has a lower SSRV level than the existing District 74, this is necessary to maintain District 80 as an additional Latino district. The SSRV level in District 74 is high enough to preserve Latino voting strength, and does not require us to dismantle District 80 or radically redraw the entire state map. The LRB created District 80 as an additional Latino District and our map keeps it as such.

The Justice Department also objected to the proposed District 35. In the LRB plan District 35 paired a Latino incumbent and an Anglo incumbent in a district in which the Anglo had maintained a

higher proportion of her constituents. Our modifications eliminate the pairing, maintaining a heavily Democratic District 35 with no incumbent, and an SSRV of 51.5%.

V

There being no reason for delay, we direct entry of final judgment in this case pursuant to Federal Rule of Civil Procedure 54(b).

So **ordered** and **signed** this 36th day of November, 2001.

---
PATRICK E. HIGGINBOTHAM
UNITED STATES CIRCUIT JUDGE

---
JOHN HANNAH, JR.
UNITED STATES DISTRICT JUDGE

---
T. JOHN WARD
UNITED STATES DISTRICT JUDGE

-10-